*Whitfield v. City of New York*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022

(Submitted:   December 9, 2022    Decided:   March 15, 2024)

Docket No. 22-412

JOHN DAVID WHITFIELD,

*Plaintiff–Appellant,*

–v.–

CITY OF NEW YORK, OFFICIALLY, JOSEPH CARDIERI, INDIVIDUALLY,
KATHLEEN SKOWYRA, INDIVIDUALLY, JENNIFER FELLMAN, INDIVIDUALLY,
PHOEBE ROSEN, INDIVIDUALLY, DAVID A. HANSELL, INDIVIDUALLY,

*Defendants–Appellees.*

B  e  f  o  r  e :

CARNEY and SULLIVAN, *Circuit Judges,* and LIMAN, *District Judge.*[*]

---

[*] Judge Lewis J. Liman, of the United States District Court for the Southern District of New York, sitting by designation.

Plaintiff-Appellant John D. Whitfield applied for a job as a Youth Development Specialist with the New York City Administration for Children's Services ("ACS"). His application was ultimately rejected. Whitfield alleges that ACS's decision not to hire him was discriminatory and violative of his First and Fourteenth Amendment rights. Whitfield initially challenged ACS's decision in New York State Supreme Court, New York County, by filing a petition under Article 78 of the New York Civil Practice Law and Rules, which authorizes a special proceeding that allows speedy review of state administrative action. The state court denied Whitfield's petition and dismissed the proceeding. By the time of the state court dismissal, Whitfield had initiated this federal court action against the City of New York and five ACS employees, asserting claims for damages under 42 U.S.C. § 1983; upon the state court's dismissal, he filed an amended complaint re-asserting those claims and adding new damages claims under section 1983 and New York state law. The United States District Court for the Southern District of New York dismissed the federal case on *res judicata* grounds, concluding that Whitfield's state court proceeding was not adjudicated as a "pure" Article 78 proceeding, but rather as a "hybrid" proceeding, in which Whitfield could have pursued the claims he raises here. For this reason, the district court held that Whitfield was barred from pursuing his damages claims in federal court.

We agree with Whitfield that the state court adjudicated the state court matter as a pure Article 78 proceeding, not as a hybrid. The state court therefore lacked the power to award Whitfield the full scope of relief—that is, the damages—that he now seeks in this action, and the district court erred by dismissing the amended complaint on *res judicata* grounds. For these reasons, we vacate the district court's judgment of dismissal and remand for further proceedings consistent with this opinion. We affirm the district court's judgment, however, with respect to the denial of Whitfield's motion for sanctions against defense counsel.

VACATED IN PART, AFFIRMED IN PART, AND REMANDED.

Judge Sullivan concurs in part and dissents in part in a separate opinion.

---

John D. Whitfield, *pro se*, Brooklyn, NY, *Plaintiff–Appellant*.

D. Alan Rosinus, Jr., MacKenzie Fillow, of counsel, *for* Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY, *for Defendants–Appellees*.

CARNEY, *Circuit Judge*:

Article 78 of the state's Civil Practice Law and Rules ("CPLR") authorizes New York state courts to conduct special proceedings in which a petitioner may obtain speedy review of state administrative action. Reflecting the proceeding's roots in the earlier petitions for writs of mandamus, prohibition, and certiorari to review, *see* CPLR 7801, the questions that may be raised in such a proceeding are limited, *see* CPLR 7803. If the proceeding "was brought to review [an administrative] determination," then the court's judgment "may annul or confirm the determination in whole or in part, or modify it, and may direct or prohibit specified action" by the respondent agency or officer. CPLR 7806. As to restitution and damages, however, an Article 78 court may award only damages that are "incidental to the primary relief sought by the petitioner" and that would be otherwise recoverable in a separation action or proceeding against the same agency or officer "in its or his official capacity." CPLR 7806.

This appeal requires us to consider whether a state court judgment in a proceeding initiated by a *pro se* litigant's Article 78 petition precludes his subsequent action for damages on the same set of facts. More specifically, we ask whether the state court here adjudicated an Article 78 petition that included claims for defamation and for civil rights-related damages as a "pure" Article 78 proceeding (in which the court could not award such damages) or as a "hybrid" proceeding (in which it could). If a damages award was not available, then *res judicata* does not bar the subsequent damages claims because the state proceeding did not make available the "full measure of relief" that could be awarded in the latter action. *Colon v. Coughlin*, 58 F.3d 865, 870 n.3 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).

3

Plaintiff-Appellant John D. Whitfield appeals from a judgment entered by the United States District Court for the Southern District of New York (Furman, *J.*) dismissing his amended complaint on *res judicata* grounds. Whitfield was convicted of second-degree murder and, consistently maintaining his innocence, he served a lengthy sentence in the New York state prisons. After his release in 2012, Whitfield worked several jobs teaching life skills to young people. In 2018, he applied for a job with the New York City Administration for Children's Services ("ACS") as a Youth Development Specialist ("YDS"). He was not hired for the position. In this suit, he alleges that ACS wrongfully declined to hire him because of both his criminal record and his views about the criminal justice system, which he had expressed publicly in *The Whitfield Files*, a memoir about his claims of innocence and the state criminal proceedings leading to his conviction.

After his job application was turned down, Whitfield petitioned for relief in the New York State Supreme Court, New York County, alleging that ACS's decision not to hire him was arbitrary and capricious, discriminatory, and violative of his First Amendment rights. In his petition, which he designated as brought under Article 78 of the CPLR, Whitfield sought back pay and an order directing ACS to hire him as a YDS, as well as compensatory damages for alleged constitutional violations, defamation, and emotional pain and suffering. In August 2020, the state court (Kelley, *J.*) denied Whitfield's petition and dismissed the proceeding.

While the state court proceeding was pending, Whitfield brought this action. Then, in October 2020, after the state court's dismissal in August, Whitfield filed his amended federal court complaint (the operative complaint here), based on the same facts. In that complaint, he sues the City of New York (the "City") and five ACS employees: Joseph Cardieri, Kathleen Skowyra, Jennifer Fellman, Phoebe Rosen, and David A. Hansell (together with the City, "Defendants"), for "selective enforcement,

4

First Amendment retaliation, and municipal liability" under section 1983, and, under state law, for discrimination. *Whitfield v. City of N.Y.*, No. 20-cv-4674, 2021 WL 1700592, at *1 (S.D.N.Y. Apr. 29, 2021) ("*Whitfield* (S.D.N.Y.)").

In April 2021, the district court dismissed the complaint on *res judicata* grounds. The district court concluded that the state court treated Whitfield's petition as initiating a hybrid Article 78 proceeding; Whitfield therefore (in the district court's view) could have pursued and received relief in state court on his damages claims and all causes of action arising from ACS's refusal to hire him; and the state court judgment consequently barred Whitfield's entire federal suit. After unsuccessfully seeking reconsideration and sanctions against defense counsel for pursuing the *res judicata* defense, Whitfield brought this appeal.

On *de novo* review, we must disagree with the able district court judge. That is, we are persuaded that the state court did not adjudicate Whitfield's Article 78 petition as a hybrid proceeding; rather, the state court left the Article 78 proceeding initiated by Whitfield's petition unconverted, and it limited itself to Article 78 review and remedies. It is true that, in his Article 78 petition, Whitfield sought an award of damages that opened the door to a hybrid conversion by the court. But the state court itself took no affirmative step to indicate that it exercised its discretion to treat the proceeding as anything other than one purely under Article 78; in fact, it failed to act on Whitfield's explicit request to convert the proceeding, and in its decision the court never referred to any conversion or identified the proceeding as "hybrid." Guided further by New York's presumption against applying *res judicata*, we conclude that the state court is best understood to have adjudicated Whitfield's petition constrained by the substantive and remedial limitations imposed by Article 78. Whitfield therefore was not afforded a full and fair chance to litigate the damages claims he asserts here. Accordingly, we vacate

the district court's judgment insofar as it dismissed Whitfield's complaint on *res judicata* grounds.

As an ancillary matter, we further conclude that the district court acted well within its discretion in denying Whitfield's sanctions motion against defense counsel. And finally, because no reasonable observer could question the district court's impartiality in this case, we reject Whitfield's request that on remand the case be assigned to a different district judge.

VACATED IN PART, AFFIRMED IN PART, AND REMANDED.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from the allegations in Whitfield's amended complaint, which we accept as true for purposes of reviewing the district court's dismissal. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014).

Whitfield was convicted of murder in the second degree and served a lengthy sentence before he was released in November 2012.[1] Throughout, he has maintained his innocence.

In 2003, while incarcerated, he published a memoir entitled *The Whitfield Files*, which he based on his claims of innocence and the related criminal proceedings. The work received an honorable mention in a competition sponsored by PEN America.

---

[1] Whitfield alleges that he served twenty-four and one-half years in prison; the state court stated that Whitfield served fifteen years. *See Whitfield v. City of N.Y. Admin. for Children's Services*, No. 101407/2019, 2020 WL 5040369, at *1 (N.Y. Sup. Ct. Aug. 26, 2020), *aff'd*, 158 N.Y.S.3d 63 (1st Dep't 2021), *leave to appeal denied*, 38 N.Y.3d 911 (2022). This discrepancy, although puzzling, does not affect resolution of the issues on appeal.

From 2008 to 2012, while he was confined at Woodbourne Correctional Facility, Whitfield served as a Youth Assistant Program facilitator and coordinator.

In the years following his release in 2012, he was hired as a youth counselor by a nonprofit organization, and he worked with hundreds of students, including gang-affiliated and gang-adjacent students, in several junior high and high schools across New York City, teaching the students "life skills," including techniques for dealing with peer pressure and pressure to join gangs. First Amended Complaint ¶ 22. He also worked in community centers in Brooklyn and the Bronx, and from 2016 to 2018, he worked in Rikers Island's youth facilities, also teaching life skills to detained young people from fifteen to nineteen years of age.

In the spring of 2018, six years after his release, Whitfield applied to ACS for a position as a YDS. After passing a screening process and an interview, in June 2018 he was informed that he had been "selected" as a YDS. *Id.* ¶¶ 25–26. He received and completed employment documents, attended a related medical appointment, passed drug and alcohol tests, and completed an employment verification process. In July 2018, ACS informed Whitfield that—with the possible exception of concerns about his criminal history—he had been deemed fit to work as a YDS. Before he could begin work, however, he would need approval from three entities: the New York State Justice Center for the Protection of People with Special Needs (the "Justice Center"), the New York City Department of Citywide Administrative Services ("DCAS"), and ACS. The Justice Center and DCAS then approved Whitfield to work as a YDS; ACS, however, did not give its approval, and ultimately he was not hired.

The amended complaint suggests that Whitfield received no formal notification of ACS's decision until a year later, in June 2019, when Defendants answered a complaint filed by Whitfield with the New York State Division of Human Rights. In their answer, Whitfield alleges, Defendants "revealed . . . for the first time" that ACS

7

refused to hire Whitfield because of his "'strongly held views about the criminal justice system [expressed in *The Whitfield Files*]'" and because of "'his lack of experience performing daily one-on-one direct care with youth.'" *Id.* ¶¶ 42–43 (bracketed material in original). Whitfield further alleges statements by Defendants to the effect that "[Whitfield's] comments in *The Whitfield Files* were 'anti-law enforcement,' 'anti-prosecutorial' and 'anti-establishment,'" and that "if [Whitfield] was allowed to work with youth in detention centers his presence would cause 'violence,' 'dissension' and 'instability.'" *Id.* ¶ 43.

## II. The Article 78 Proceeding

### A. The petition

In September 2019, proceeding *pro se* in New York State Supreme Court, Whitfield filed a document styled as a "VERIFIED PETITION" seeking "a Judgment Pursuant to Article 78 of the [CPLR]" against ACS. App'x at 24. He alleged that ACS's decision not to hire him was "arbitrary, capricious, and an abuse of discretion because the refusal to hire petitioner as a YDS was discriminatory and violated petitioner's federal and state constitutional rights not to be discriminated against." *Id.* at 27 ¶ 17. Citing CPLR Article 78 and New York Correction Law § 755,[2] Whitfield requested a judgment (1) vacating and setting aside ACS's decision not to hire him as a YDS; (2) directing ACS "to hire [him] as a YDS immediately" with "all back pay, benefits, privileges, and all other resulting advantages as of July 2018," and "to restore [him] in all respects to the status he enjoyed prior to the discriminatory actions"; (3) ordering

---

[2] Article 23-A of the New York Correction Law (§§ 750–55) "protects persons who seek employment, after having been convicted of one or more criminal offenses, from unfair discrimination." *Dempsey v. N.Y.C. Dep't of Educ.*, 25 N.Y.3d 291, 298 (2015); *see* N.Y. Corr. L. § 752. Section 755 of the Correction Law provides in pertinent part: "In relation to actions by public agencies, the provisions of this article shall be enforceable by a proceeding brought pursuant to article seventy-eight of the [CPLR]." N.Y. Corr. L. § 755(1).

ACS to pay him "compensatory and punitive damages for violating his rights not to be discriminated against, for emotional distress, and for loss of all other benefits, advantages and rights"; and (4) awarding him "costs, disbursements, expenses and other litigation costs." *Id.* at 27.

In November 2019, Whitfield filed an "AMENDED VERIFIED PETITION." App'x at 29. Its first sentence advised, "This Article 78 proceeding is brought to challenge and reverse [ACS's] discriminatory decision denying Petitioner John D. Whitfield employment as a [YDS]." *Id.* In the petition, Whitfield charged that ACS's reasons for not hiring him

> were not rationally based, were arbitrary and capricious, completely untrue, ignored critical information, were not support by evidence, . . . rested entirely on subjective considerations, violated [Whitfield's] First and Fourteenth Amendment rights to Freedom of Speech, were Defamatory Per Se, and were taken in violation of Article 23-A of the Correction Law . . . , the New York State Human Rights Law . . . , the New York City Human Rights Law . . . , and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny.

*Id.* at 29–30 (internal quotation marks omitted). He described causes of action under state law and the New York and U.S. Constitutions. He again requested a judgment under CPLR Article 78 and Correction Law § 755, and an order vacating ACS's decision and directing ACS to hire him immediately as a YDS. He also sought "compensatory damages for violating his rights not to be discriminated against, for violating his constitutional right to freedom of speech, for publishing false, defamatory and damaging statements, for emotional and psychological pain, suffering and distress, and for loss of all other benefits, advantages and rights." *Id.* at 57. ACS moved to dismiss the petition; the state court denied the motion and directed ACS to answer and file the administrative record along with application materials that ACS received for the position of YDS.

B. <u>The state court decision</u>

In August 2020, Justice John J. Kelley issued a Decision, Order, and Judgment denying Whitfield's Article 78 petition and dismissing the proceeding. *See Whitfield v. City of N.Y. Admin. for Children's Servs.*, No. 101407/2019, 2020 WL 5040369 (N.Y. Sup. Ct. Aug. 26, 2020) ("*Whitfield* (Sup. Ct.)"), *aff'd*, 158 N.Y.S.3d 63 (1st Dep't 2021) ("*Whitfield* (App. Div.)"), *leave to appeal denied*, 38 N.Y.3d 911 (2022). Because its exact contents are critical to our *res judicata* analysis, we describe this state court decision in some detail.

The court began its discussion as follows: "In this CPLR article 78 proceeding, the petitioner seeks judicial review of a[n] [ACS] determination declining to hire him for the position of [YDS]." *Id.* at *1. It continued, "He alleges that ACS improperly premised its decision upon his prior criminal record and a memoir that he published approximately 15 years ago in which he was critical of law enforcement." *Id.* The court recounted the relevant procedural history, which we have sketched, and then, before proceeding further, it stated its ruling: "The petition now is denied on the merits, and the proceeding is dismissed." *Id.*

The court stated the standard governing its review of ACS's decision not to hire Whitfield as follows:

> A court's review of administrative actions is limited to the record made before the agency. . . . Moreover, a court reviewing a determination of an administrative agency must judge the propriety of that determination solely upon the grounds invoked by the agency, and the court is powerless to affirm the agency through reasoning it deems more appropriate. . . . Where, as here, an administrative determination is made, and there is no statutory requirement of a trial-type hearing, that determination must be confirmed unless it is arbitrary and capricious, affected by an error of law, or made in violation of lawful procedure (*see* CPLR 7803[3]). Inasmuch as the petitioner does not allege that ACS committed any procedural violations, the court must thus consider only whether the challenged determination was arbitrary and capricious or affected by an error of law.

10

*Id.* at *2 (internal quotation marks, citations, and alterations omitted). The court distilled "[t]he question . . . presented by [the] proceeding" to the following: "[W]hether ACS's determination was made in good faith, was rational, and based only on permissible factors, or whether the reasons proffered by ACS for its determination were pretextual, that is, the actual reason for denial of the application was in fact the petitioner's criminal record." *Id.* at *3.

In answer to that question, the court concluded that ACS's decision not to hire Whitfield was "rational, based upon appropriate factors, and not discriminatory." *Id.* In its discussion, the court emphasized that, unlike Whitfield, all of the applicants whom ACS hired as a YDS had "significant prior experience as one-on-one youth counselors." *Id.* at *4. The court further found that, because several of those successful applicants had criminal records (including one with a manslaughter conviction), ACS did not discriminate against Whitfield based on his criminal record. *See id.*

Concluding that ACS's decision was also not "affected by an error of law," the court said that it "reject[ed] [Whitfield's] contention that ACS violated his First Amendment rights when it considered his published writings as a negative factor in evaluating his employment application." *Id.* To reach that conclusion, it first reviewed the *Pickering* balancing test, *see Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563 (1968), under which "a court must balance the declarant's interest in freedom of expression against the employer's interest in restricting the speech in order to maintain an efficient workplace." *Whitfield* (Sup. Ct.), 2020 WL 5040369, at *4. The state court then explained:

> Although the court might not have accorded the petitioner's writings the same level of significance as the ACS accorded them, the court may not substitute its judgment for that of ACS as it relates to its hiring decisions, and is constrained to determine only whether ACS's determination in this regard was completely irrational (*see Matter of Weiss v County of Nassau*, [112

N.Y.S.3d 746, 746 (2d Dep't 2019)]). Given this limitation, the court concludes that it was not irrational for ACS to consider the petitioner's published writings, in which he expressed hostility to law enforcement personnel and the criminal justice system generally. . . . [I]t cannot be said that it was completely irrational and inappropriate for ACS to conclude that the attitudes expressed by the petitioner might impede or adversely affect his performance in a job that will require him to counsel youngsters on how to negotiate the often-fraught relationship between those at-risk youngsters and law enforcement personnel. Hence, consideration of the petitioner's prior writings, and the level of importance attached to those writings by ACS, did not render ACS's determination arbitrary and capricious or affected by an error of law.

*Id.* at *5.

Finally, the court stressed that its ability to give full consideration to Whitfield's claims was constrained by the standard of review governing Article 78 proceedings:

The court notes that, had the petitioner commenced a direct action against ACS pursuant to Executive Law § 298 alleging unlawful discrimination in hiring on the basis of his criminal record, rather than seeking judicial review pursuant to CPLR article 78, he would have had the opportunity to establish his claims only by the preponderance of the evidence. . . . Inasmuch as the petitioner elected to challenge ACS's hiring decision via this CPLR article 78 proceeding, the court is constrained to apply the 'arbitrary and capricious' standard of judicial review (see CPLR 7803[3]), which is far more deferential to the factual findings of the agency decision maker than is the 'preponderance of the evidence' standard. Indeed, the court may not conduct a de novo review of ACS's hiring determinations. Nor will it second guess ACS's conclusion that numerous other applicants for the YDS position had more appropriate credentials and experience than those of the petitioner or were better candidates for the job. Although the court commends the petitioner for his efforts in overcoming his past criminal conduct, even though the court might have decided differently were it in the agency's position, the court may not upset the agency's determination in the absence of a finding, not supported by this record, that the determination had no rational basis.

*Id.* (internal quotation marks, citations, and alterations omitted). Accordingly, the court denied Whitfield's petition and "dismissed" the "proceeding." *Id.*

The Appellate Division affirmed the Supreme Court's judgment, describing it as "denying the petition, inter alia, to annul the determination of [ACS], . . . which declined to hire petitioner as a [YDS], and dismissing the proceeding brought pursuant to CPLR article 78." *Whitfield* (App. Div.), 158 N.Y.S.3d at 64. On its own review of the merits and citing CPLR 7803(3), the Appellate Division agreed with the Supreme Court that ACS's hiring decision "was not arbitrary and capricious or affected by an error of law." *Id.* It, too, concluded that ACS's proffered reasons for not hiring Whitfield—namely, his lack of one-on-one counseling experience and his "expressed views of the fundamental unfairness of the criminal justice system"—were "rationally based in the record." *Id.*

The court also rejected Whitfield's argument that ACS had "violated his free speech rights under the First Amendment" by taking his writings into account in its hiring decision. *Id.* at 64–65. In the court's view, ACS's concern that Whitfield's views about the criminal justice system would disrupt his work with children was "rational" and "support[ed]" by the "record." *Id.* at 65. Finally, the court concluded—again based on "the record"—that ACS did not discriminate against Whitfield because of his criminal conviction. *Id.*

The New York Court of Appeals denied Whitfield leave to appeal. 38 N.Y.3d 911.

III.    **Proceedings in the District Court**

Whitfield filed his complaint in this federal action in June 2020—after filing his Article 78 petition, but before the State Supreme Court issued its ruling in August. As described above, Whitfield filed an amended complaint in October 2020, in which he asserts claims for: (1) infringement of his First Amendment rights under section 1983 (against the individual defendants); (2) violation of his rights to equal protection of the law under the Fourteenth Amendment and section 1983 (against all defendants); (3)

13

state law claims for discrimination (against the individual defendants); and (4) municipal liability under section 1983 (against the City). He seeks "compensatory and consequential damages, including damages for emotional and psychological distress . . . and other pain and suffering," "economic losses," "special damages," and attorneys' fees and costs, as well as punitive damages from the individual defendants. First Amended Complaint ¶ 214.

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), citing several grounds: *res judicata* (or, in the alternative, collateral estoppel); qualified immunity of the individual defendants; and failure to state a plausible claim for relief. And in April 2021, the district court granted the motion, relying solely on *res judicata* grounds. *See Whitfield* (S.D.N.Y.), 2021 WL 1700592. Applying New York preclusion law, under which "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action," *id.* at *1 (internal quotation marks omitted), the court concluded that (1) the state court proceeding resulted in a final judgment on the merits; (2) this federal action involves the same parties or their privies as the state court proceeding; and (3) this action involves claims that were or could have been raised in the state court proceeding. *Id.* Accordingly, the court determined that Whitfield's section 1983 and other damages claims were barred.

The court identified "only one remotely colorable argument against application of *res judicata*," *id.* at *2: namely, the rule that an Article 78 proceeding generally does not preclude a later section 1983 suit because "the full measure of relief" available in a section 1983 suit is not available in an Article 78 proceeding, *id.* (quoting *Colon*, 58 F.3d at 870 n.3). In reaching its conclusion that *res judicata* nonetheless applied, the district court relied on an "important exception to that rule: it does not apply to 'hybrid' state court proceedings in which (1) a plaintiff sought both Article 78 relief and forms of

14

relief that are not available in an Article 78 proceeding and (2) the state court ruled on the requests for non-Article 78 relief." *Id.*

The district court held that this exception applied. *First*, the court found that, in his Article 78 petition, Whitfield sought damages beyond those ordinarily available in an Article 78 proceeding. *See id. Second*, stressing that the state court said that it was dismissing Whitfield's petition "on the merits," the district court concluded that the state court had necessarily ruled on all of Whitfield's claims for relief, including his claims for relief that were not cognizable under Article 78. From that fact, the district court reasoned that the state court had treated the proceeding as a hybrid one and had adjudicated all the claims brought in Whitfield's petition. *Id.*

The district court thus determined that Whitfield's claims in the federal action either were or could have been raised in the state court proceeding and that principles of *res judicata* required dismissal. *Id.* at *2–3.[3] It entered judgment accordingly.

Whitfield unsuccessfully sought reconsideration under Federal Rule of Civil Procedure 59(e), arguing that the district court erred in finding that the state court proceeding was a hybrid one. *See Whitfield v. City of N.Y.*, No. 20-cv-4674, 2022 WL 563548 (S.D.N.Y. Feb. 24, 2022) ("Reconsideration Decision"). The court reiterated its conclusion that Whitfield had himself brought a "hybrid proceeding," pointing to Whitfield's request for relief outside of a court's Article 78 authority. *Id.* at *2. The court acknowledged, however, that it was a "closer question" whether "the state court adjudicated Whitfield's petition as a hybrid proceeding," *id.*, but it again concluded that the state court treated the proceeding as a hybrid one, resting heavily on the state court's "dismiss[al] [of] Whitfield's petition in its entirety and 'on the merits,'" *id.*

---

[3] The district court declined to reach Defendants' alternative arguments in support of dismissal. *Whitfield* (S.D.N.Y.), 2021 WL 1700592, at *3 n.1.

(quoting *Whitfield* (Sup. Ct.), 2020 WL 5040369, at \*2). Relying on the state court's First Amendment discussion, the district court also noted in passing that the state court "addressed at least some of Whitfield's non-Article 78 claims on the merits," *id.*; but the district court commented that it was "immaterial" whether the state court "specifically mention[ed]" Whitfield's non-Article 78 claims at all because Whitfield had "brought a hybrid petition and . . . the state court dismissed the petition in its entirety, without severing his claims or dismissing one species of claim without prejudice," *id.* (internal quotation marks omitted).[4] That was enough, in the district court's view, for the state court proceeding to be deemed a "hybrid" and for Whitfield's section 1983 and other damages claims to be barred from consideration in the federal court action.

Whitfield timely appealed.

## DISCUSSION

We review *de novo* the district court's dismissal under Rule 12(b)(6) and the district court's application of *res judicata*. *TechnoMarine SA*, 758 F.3d at 498. Because Whitfield is a *pro se* litigant, we construe his submissions liberally, as "rais[ing] the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks omitted).

---

[4] The district court also denied as frivolous Whitfield's motion for sanctions against defense counsel, which the court said was "based only on the fact that the City opposed his motion for reconsideration." Reconsideration Decision, 2022 WL 563548, at \*3. Whitfield also appeals this decision.

## I. CPLR Article 78 and *Res Judicata*

### A.    The benefits and limitations of Article 78 proceedings

CPLR 103(b) provides: "All civil judicial proceedings shall be prosecuted in the form of an action, except where prosecution in the form of a special proceeding is authorized." One such special proceeding is authorized by Article 78, entitled "Proceeding Against Body or Officer." *See generally* CPLR 7801–06. *See also* CPLR 7804(a) ("A proceeding under this article is a special proceeding.").

As a leading New York treatise explains, "The Article 78 proceeding supersedes the common law writs of mandamus, prohibition, and certiorari to review, supplying in replacement of all three of them a uniform device for challenging the activities of an administrative agency in court." David D. Siegel, New York Practice § 557 (6th ed. 2023) ["Siegel"]; *see also Davis v. Halpern*, 813 F.2d 37, 38 n.1 (2d Cir. 1987) ("Article 78 is a method for challenging state administrative action."). The lineage of the Article 78 proceeding traces back to 1937, when it was first authorized by Article 78 of the Civil Practice Act, the CPLR's predecessor. Siegel § 557. The proceeding came to be regarded as a success in simplifying access to the courts for disputes about government administration: over time it became so frequently used and "firmly ensconced in the bar's affections" that, when the state's Advisory Committee on Practice and Procedure later devised the CPLR,[5]  "the committee saw to it that the successor provisions were situated in the same-numbered article slot they had in the old Civil Practice Act: Article 78." *Id.*

---

[5] The Advisory Committee was appointed in 1955; the CPLR was enacted in 1963. Siegel § 2.

Unlike an ordinary civil action (often referred to as a "plenary action"),[6] the substantive scope of an Article 78 proceeding is limited. CPLR 7803 defines the proceeding's boundaries. It provides in relevant part:

> The only questions that may be raised in a proceeding under this article are:
>
> 1. whether the body or officer failed to perform a duty enjoined upon it by law; or
>
> 2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
>
> 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
>
> 4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

CPLR 7803.[7]

Subsection (3) encompasses the questions raised in Whitfield's amended Article 78 petition: Whitfield asserted that ACS's decision not to hire him was "arbitrary and capricious," "in violation of law," and an "abuse of discretion." Amended Petition at 29–30 & n.1, 44; *id.* at 43–45 ¶¶ 47, 49, 55. That subsection—CPLR 7803(3)—is also the

---

[6] *See, e.g., Meisner v. Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs.*, 108 N.Y.S.3d 206, 209 (3d Dep't 2019) (distinguishing between an Article 78 proceeding and a "plenary action"); *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986) (distinguishing between an Article 78 proceeding and a "civil action"); *cf.* Siegel § 4 ("An action is the plenary prosecution of a right, seeking a final judgment.").

[7] Professor Siegel teaches that subsections (1), (2), and (4) of CPLR 7803 correspond respectively to the common law writs of mandamus, prohibition, and certiorari. Subsection (3), in contrast, lies in the "cloudy areas" between those writs. Siegel § 557.

source of the standard cited by the state court that adjudicated Whitfield's challenge to ACS's action. *See, e.g.*, *Whitfield* (Sup. Ct.), 2020 WL 5040369, at *3.

Article 78 proceedings differ further from plenary civil actions in that Article 78 proceedings are characterized by a limited and expedited "summary procedure." *Coma Realty Corp. v. Davis*, 161 N.Y.S.3d 125, 128 (2d Dep't 2021); *see also Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986) (Article 78 proceedings are meant to ensure "a speedy correction of improper action by a body or officer" (internal quotation marks omitted)).[8] For example, an Article 78 petitioner "is not entitled to discovery as of right, but must seek leave of court pursuant to CPLR 408." *Johnson v. Annucci*, 174 N.Y.S.3d 148, 150 (3d Dep't 2022).[9] In an Article 78 proceeding, no party may be joined or impleaded, and no third-party practice or intervention is allowed, without leave of the court. CPLR 401, 7802(d); *Davidson*, 792 F.2d at 280. If in an Article 78 proceeding a triable issue of fact is raised, it must be tried "forthwith," CPLR 7804(h), meaning that the proceeding is entitled to a "special trial preference" on the court's calendar, Siegel § 569. These and other summary aspects reflect the purposes that, we have recognized, Article 78 is designed to serve: "an Article 78 petitioner often needs immediate relief such as release from confinement, reinstatement of employment, or reinstatement of a terminated license." *Davidson*, 792 F.2d at 280.

---

[8] *See also* CPLR 409(b) (providing that, in a special proceeding, "The court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised"); Siegel § 4 (Although a special proceeding "seeks the vindication of a right in a final judgment, . . . it is brought on with the procedure and speed of a motion").

[9] *See also Johnson*, 174 N.Y.S.3d at 150 ("Because discovery tends to prolong a case, and is therefore inconsistent with the summary nature of a special proceeding, discovery is granted only where it is demonstrated that there is need for such relief." (internal quotation marks omitted)). By contrast, in a plenary action, the general rule is that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof. . . ." CPLR 3101(a).

The relief available in an Article 78 proceeding is also limited. CPLR 7801 provides that a petitioner may obtain only "[r]elief previously obtained" by the old writs—mandamus, prohibition, and certiorari. Thus, CPLR 7806 gives the court the following choices for shaping its judgment. First, it may "grant the petitioner the relief to which he is entitled, or may dismiss the proceeding either on the merits or with leave to renew." CPLR 7806. And when a proceeding "was brought to review [an administrative] determination, the judgment may annul or confirm the determination in whole or in part, or modify it, and may direct or prohibit specified action by the respondent." *Id.* Of special importance here, CPLR 7806 further provides:

> Any restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity.

Thus, in an Article 78 proceeding, the court may not award damages other than those "incidental to the primary relief sought." *Id.* What damages are properly treated as "incidental" may not be an easy question: "Whether the essential nature of the claim is to recover money, or whether the monetary relief is incidental to the primary claim, is dependent upon the facts and issues presented in a particular case." *Gross v. Perales*, 72 N.Y.2d 231, 236 (1988). But Article 78's damages limitation helps to enable a prompt, if limited, decision. As we explained in *Davidson*, this limitation "protects an Article 78 court from the burden of deciding numerous issues collateral to the primary relief the petitioner seeks[, such as] the presence or absence of state action, immunity of state actors, and the possible existence of a municipal custom or policy." 792 F.2d at 280.

As is evident from the course of Whitfield's litigation, sometimes an Article 78 petitioner brings claims and seeks relief lying outside these statutory boundaries. In

20

such situations, the CPLR offers the court certain practical options. For example, CPLR 103(c) provides:

> If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution. If the court finds it appropriate in the interests of justice, it may convert a motion into a special proceeding, or vice-versa, upon such terms as may be just, including the payment of fees and costs.[10]

Thus, one option for the state court is to convert an Article 78 special proceeding to a plenary action. A court's exercise of its power to convert a case to "the proper form" is "discretionary." *Davidson*, 792 F.2d at 281; *see* CPLR 103(c) ("*If* the court finds it appropriate . . . , it *may* convert. . . . (emphasis added)); *Jackson v. Bank of Am., N.A.*, 53 N.Y.S.3d 71, 75 (2d Dep't 2017) ("[W]here an action or proceeding is brought in the wrong form or under an inappropriate statute, the court, *in its discretion*, may deem it brought in a proper fashion, thus avoiding a dismissal." (emphasis added) (internal quotation marks and citation omitted)).[11] The formal conversion of a case under CPLR 103(c) is not complicated or burdensome: it "entails nothing more than a court order reciting, for example, that the pleadings in the special proceeding are to be deemed the

---

[10] Before the advent of the CPLR, "the bringing of a special proceeding when an action was appropriate, or vice versa, resulted in dismissal. Dismissal is no longer permitted in that situation." Siegel § 4.

[11] *See also, e.g.*, *Dolce-Richard v. N.Y.C. Health & Hosps. Corp.*, 53 N.Y.S.3d 124, 126 (2d Dep't 2017); *Seymour v. Cnty. of Saratoga*, 598 N.Y.S.2d 93, 94 (3d Dep't 1993); *Manshul Constr. Corp. v. Bd. of Educ. of City of N.Y.*, 551 N.Y.S.2d 497, 499 (1st Dep't 1990); *Gertler v. Goodgold*, 487 N.Y.S.2d 565, 570 (1st Dep't 1985).

pleadings in an action and directing that the case proceed henceforth as if it were an action in which the answer has just been served." Siegel § 4.[12]

The "hybrid" Article 78 action, mentioned above, is another procedural device available to state courts confronted with an Article 78 petition that seeks relief not strictly available under that Article. The court can elect to address, in a single proceeding, claims that are properly brought under Article 78 *and* claims that may not be brought under Article 78, and to use a procedural approach suited to each, applying the summary procedural rules described above for the Article 78 causes of action and plenary procedural rules for the non-Article 78 causes of action. *See, e.g., Coma Realty Corp.*, 161 N.Y.S.3d at 128 ("In a hybrid proceeding and action, separate procedural rules apply to those causes of action which are asserted pursuant to CPLR article 78, on the one hand, and those which seek to recover damages and declaratory relief, on the other hand." (internal quotation marks omitted)).[13]

The CPLR does not explicitly reference hybrid proceedings, but the New York Court of Appeals has acknowledged with apparent approval its use by the lower courts. *See, e.g., Loehr v. Admin. Bd. of Cts. of State of N.Y.*, 29 N.Y.3d 374, 378 (2017) (referring to a "hybrid CPLR article 78 proceeding and declaratory judgment action"); *N.Y. State Psychiatric Ass'n, Inc. v. N.Y. State Dep't of Health*, 19 N.Y.3d 17, 22 (2012) (same). Thus,

---

[12] *See, e.g., Greenberg v. Assessor of Town of Scarsdale*, 996 N.Y.S.2d 48, 52 (2d Dep't 2014) ("Accordingly, we convert Matter No. 4 into a hybrid proceeding and action, with the notice of petition deemed also to be a summons, and the petition deemed to be the petition/complaint.").

[13] Going even further, the Appellate Division for the Second Department has expressly held that courts err by apply the summary procedural rules of an Article 78 proceeding to plenary claims in a hybrid one. *See, e.g., Coma Realty Corp.*, 161 N.Y.S.3d at 128 ("[W]here no party makes a request for a summary determination of the causes of action which seek to recover damages or declaratory relief, it is error for the Supreme Court to summarily dispose of those causes of action" (internal quotation marks omitted)).

state courts have issued orders under CPLR 103(c) that permit parties to litigate on a plenary basis claims initiated through an Article 78 petition alongside Article 78 claims. Of particular relevance here, the Court of Appeals has recognized the lower courts' creation of a hybrid that incorporates features of both an Article 78 proceeding and a section 1983 action. *See Coleman ex rel. Coleman v. Daines*, 19 N.Y.3d 1087, 1089 (2012) (addressing issue of mootness in a "hybrid CPLR article 78 proceeding and 42 USC § 1983 action").[14]

Thus, although an Article 78 petitioner can recover only those damages that are "incidental" to the primary relief sought, CPLR 7806, New York courts allow for the possibility of a hybrid proceeding where the petitioner can pursue Article 78 relief *and* plenary claims for damages—including claims under section 1983—in one action, on separate procedural tracks. As described above, the question presented here is whether Whitfield's state court proceeding was a pure or a hybrid Article 78 proceeding. But before answering that question, we quickly review general principles of *res judicata* and explain how they apply to Article 78 proceedings.

## B. Res judicata

The full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Allen v. McCurry*, 449 U.S. 90, 96

---

[14] Each of the Appellate Divisions of the New York Supreme Court has also recognized the propriety of a hybrid Article 78 proceeding and section 1983 action. *See Mulcahy v. N.Y.C. Dep't of Educ.*, 952 N.Y.S.2d 164, 165 (1st Dep't 2012); *Greenberg*, 996 N.Y.S.2d at 49 (2d Dep't 2014); *Upstate Land & Props., LLC v. Town of Bethel*, 905 N.Y.S.2d 284, 285 (3d Dep't 2010); *1640 State Route 104, LLC v. Town of Ontario Planning Bd.*, 172 N.Y.S.3d 292, 294 (4th Dep't 2022).

(1980).[15]  This practice "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen*, 449 U.S. at 96. We therefore apply New York *res judicata* law here to determine the preclusive effect of the judgment dismissing Whitfield's state court proceeding.

As the New York Court of Appeals has explained, "Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action." *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021).[16]  New York courts apply "a transactional analysis approach in determining whether an earlier judgment has claim preclusive effect, such that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Id.* (internal quotation marks and emphasis omitted); *see also New York v. Mountain Tobacco*

---

[15]  The full faith and credit statute implements the Full Faith and Credit Clause of the U.S. Constitution, which provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. CONST. art. IV, § 1.

[16]  The term *res judicata* is sometimes used interchangeably with the term "claim preclusion"; *res judicata* is also sometimes used to refer more generally to both claim preclusion and the distinct doctrine of issue preclusion, or collateral estoppel. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589, 1594 (2020); *Migra*, 465 U.S. at 77 n.1; 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (3d ed. 2023). Issue preclusion "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees*, 140 S. Ct. at 1594. "[C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Id.* In this opinion, we use *res judicata* interchangeably with "claim preclusion," following the convention adopted by the parties and the district court here, and the New York Court of Appeals in *Simmons*. *See* 37 N.Y.3d 107. We do not address issue preclusion here: although Defendants argued before the district court that it constituted an independent ground for dismissal, the district court did not reach the argument and Defendants do not raise it on appeal.

24

*Co.*, 942 F.3d 536, 543 (2d Cir. 2019). Under New York law, as under federal law, claim preclusion is an affirmative defense that the defendant must plead and prove. CPLR 3018(b); Fed. R. Civ. P. 8(c); *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). The New York Court of Appeals has instructed that "doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." *Buechel v. Bain*, 97 N.Y.2d 295, 305 (2001).

The claim preclusion bar is thus not limitless. One limit is critical here: claim preclusion will not apply "if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Davidson*, 792 F.2d at 278. This limitation stems from the recognition that, "[w]here 'formal barriers' to asserting a claim existed in the first forum it would be 'unfair to preclude the plaintiff from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.'" *Id.* (quoting Restatement (Second) of Judgments § 26(1)(c) comment c (1982)) (alteration adopted).

In *Davidson*, the plaintiff by that name brought a suit for damages in federal court under section 1983, alleging that he had been subject to retaliatory prison disciplinary proceedings. While his federal complaint was pending, Davidson filed an Article 78 petition in state court seeking an order in the nature of mandamus setting aside the results of the disciplinary proceedings as retaliatory and violative of Davidson's due process rights. Davidson prevailed in his Article 78 proceeding. He then amended his federal complaint, abandoning his retaliation claim and alleging instead a procedural due process claim based on the same facts as underlay the Article 78 proceeding. The district court granted summary judgment to the defendants on *res judicata* grounds, concluding that Davidson's failure to assert his section 1983 due process damages claim in his Article 78 proceeding precluded him from pursuing that claim later in federal court. *See* 792 F.2d at 276–77.

25

We reversed. Determining that the damages Davidson sought in his federal suit were not "incidental to the primary relief" he had sought in his Article 78 proceeding, we reasoned that the Article 78 court had lacked the power to award Davidson the full measure of the relief he sought in his federal suit and *res judicata* therefore did not bar his section 1983 claim. *See id.* at 278–79. We found this conclusion well supported by New York case law construing the Article 78 damage award limitation and by the purpose of that limitation: namely, to ensure that Article 78 proceedings remain summary in nature. *See id.* at 278–80.

We recognized, still, that CPLR 103(c) authorizes state courts to convert an Article 78 proceeding into a plenary action. But, citing two reasons, we rejected the notion that, by virtue of that general authority, petitioners proceeding under Article 78 should be presumed able to obtain the full scope of relief available in a plenary action. *Id.* at 280–81. *First*, we found no example of a case "in which a civil rights claim raised in the context of an Article 78 proceeding was converted into a civil action." *Id.* at 281.[17] *Second*, and "[p]erhaps even more important," we observed that "a New York court is not compelled by CPLR § 103(c) to sever and convert a claim into its proper form; the power is discretionary." *Id.* (internal citation omitted). Because a state court is not *required* to convert an Article 78 proceeding to a plenary action whenever the petitioner seeks relief beyond the scope of Article 78, we were unwilling to assume that Article 78 petitioners can, as a rule, obtain the full scope of relief available in a plenary action. In other words, we declined to adopt a claim preclusion rule that would presume the state court's exercise of a discretionary power. *See id.* ("To require an Article 78 petitioner, on

---

[17] This particular reason has likely lost its force since the hybrid Article 78 proceeding/section 1983 action achieved general acceptance. As described above, it now appears to be settled in New York that plaintiffs/petitioners can, and sometimes do, pursue Article 78 claims and section 1983 damages claims in the same action. *See, e.g., Coleman*, 19 N.Y.3d at 1089.

penalty of later preclusion, to knowingly assert a claim that is improper, in the hope that the state court in its discretion might sever the claim out and convert it into a civil action, would be unfair and illogical.").

*Davidson* remains good law in our Circuit. *See, e.g.*, *Corbett v. City of N.Y.*, 816 F. App'x 551, 553–54 (2d Cir. 2020) (summary order); *Vargas v. City of N.Y.*, 377 F.3d 200, 205 (2d Cir. 2004); *Colon*, 58 F.3d at 870 n.3. The New York Court of Appeals has expressed its agreement with *Davidson*. *See Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 348 (1999).[18] Accordingly, we think it can't reasonably be disputed that a judgment in a "pure" Article 78 proceeding does not preclude, under the doctrine of *res judicata*, a later section 1983 damages claim based on the same set of facts.

The viability of hybrid Article 78 proceedings has, however, introduced confusion about when an Article 78 petitioner should fairly be deemed to have had the ability to seek plenary relief such that *res judicata* will bar future damages claims arising from the same facts. Until now, we have addressed this issue only by non-precedential summary order, in the following decisions.

In 2010, in *Sheffield v. Sheriff of Rockland County Sheriff Department*, plaintiff Sheffield brought a petition in New York State Supreme Court against her former employer alleging retaliation, libel, and discrimination under Title VII of the Civil

---

[18] As we did in *Davidson*, the *Parker* court relied on the Restatement (Second) of Judgments:

> [R]es judicata is inapplicable where the plaintiff "was unable to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to seek that remedy or form of relief."

*Parker*, 93 N.Y.2d at 349 (quoting Restatement (Second) of Judgments § 26(1)(c)) (alterations adopted).

Rights Act of 1964. *See* 393 F. App'x 808, 810 (2d Cir. 2010) (summary order). Sheffield's state court petition cited Article 75 of the CPLR, which is used to challenge an arbitrator's decision, as well as Article 78. *See id.* at 811. In connection with her Title VII and defamation claims, Sheffield's petition sought $75,000 in compensatory and punitive damages—relief that, for the reasons described above, was outside the proper scope of an Article 78 proceeding. *See id.* at 812. In resolving Sheffield's petition, the state court: "(1) upheld the arbitrator's decision on Article 75 review; (2) noted that Sheffield commenced the action as an Article 78 proceeding and dismissed the petition without affording her the employment-related relief she sought; *and* (3) dismissed Sheffield's claim for damages for defamation and racial discrimination." *Id.* at 812–13 (emphasis in original). Sheffield later brought a federal suit asserting similar claims.

We held that, as a result of the state court judgment, *res judicata* barred Sheffield's federal suit. This was so, we explained, because (1) Sheffield had "commenced a hybrid action" (as evidenced by the plenary relief she sought in her state court petition); and (2) the state court had "treated" the prior action as a hybrid action (as evidenced by the court addressing the substance of Sheffield's defamation and discrimination claims, both of which are exclusively plenary in nature).[19] *Id.* at 813. We found it immaterial that the state court had not "specifically mention[ed]" some of Sheffield's Title VII claims because "Sheffield clearly presented those claims to the court and the court's dismissal of the entire petition necessarily involved the dismissal of these Title VII claims as well." *Id.* And although Sheffield argued that the state court committed legal error in dismissing her defamation and discrimination claims, we observed that "the

---

[19] As noted, in *Sheffield*, the state court, after dismissing the Article 78 petition, also explicitly dismissed the claim for damages for defamation and racial discrimination. Accordingly, the court's disposition of the entire petition reflected the court's treatment of the proceeding as a hybrid one. 393 F. App'x at 813.

policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided, whether due to oversight by the parties or error by the courts." *Id.* at 813 n.3 (quoting *Reilly v. Reid*, 45 N.Y.2d 24, 28 (1978)) (alteration adopted). Thus, we said, the "proper course" for Sheffield to challenge the state court's substantive rulings would have been "to appeal the state court's decision rather than to seek to restart the case in federal court." *Id.*

In 2020, in *Corbett v. City of N.Y.*, we similarly concluded that the plaintiff's claims (including a section 1983 damages claim) were barred by *res judicata* because (in our view) the plaintiff's earlier state court proceeding was a hybrid rather than a pure Article 78 proceeding. *See* 816 F. App'x at 553–54. Following *Sheffield*'s reasoning, we determined that (1) the plaintiff had commenced a hybrid proceeding by seeking—in addition to Article 78 relief—declaratory relief and relief under the Freedom of Information Law; and (2) the state court had treated the prior proceeding as a hybrid one because, by rejecting the plaintiff's facial constitutional challenge and denying his request under the Freedom of Information Law, "the Supreme Court and First Department addressed the non-Article 78 claims on the merits." *Id.* at 554. Moreover, in that case, the plaintiff conceded before the district court that he had initiated his prior state court proceeding as a "hybrid petition." *Corbett v. City of N.Y.*, No. 18-cv-7022, 2019 WL 2502056, at *6 (S.D.N.Y. June 17, 2019) (internal quotation marks omitted), *aff'd*, 816 F. App'x 551.

C. <u>Clarifying the relevant framework: how to determine whether a prior state court proceeding was a pure or a hybrid Article 78 proceeding</u>

At the outset, and consistent with *Sheffield* and *Corbett*, we think it is already established that a hybrid Article 78 proceeding and plenary damages action bars future damages claims based on the same transaction or series of transactions. This rule

comports with New York preclusion law, as expressed by the New York Court of Appeals and by this Court. The state court's power to award plenary relief is not limited in a hybrid Article 78 proceeding and damages action. In a hybrid proceeding, the petitioner is free to pursue Article 78 claims *and* plenary claims for damages; the claims simply proceed on separate procedural tracks. *See Coma Realty Corp.*, 161 N.Y.S.3d at 128. Thus, *res judicata* applies and precludes the petitioner from getting another bite at the apple.

In contrast, and as discussed above, the decision in a *pure* Article 78 proceeding does not bar future damages claims. In a pure Article 78 proceeding, the state court lacks "the power to award the full measure of relief" that may be sought in subsequent litigation for damages. *Vargas*, 377 F.3d at 205; *see also Davidson*, 792 F.2d at 278–79; *Parker*, 93 N.Y.2d at 348. The court is limited in the questions it may consider, CPLR 7803, and in the relief that it may award, CPLR 7806.

We also adopt the approach set out in *Sheffield* and *Corbett* for determining whether, for claim-preclusion purposes, a prior state court proceeding was a pure or a hybrid Article 78 proceeding. That is, a prior proceeding initiated under Article 78 will be deemed a hybrid proceeding only if: (1) the state court petitioner sought relief that is not available under Article 78;[20] and (2) the state court treated the proceeding as a

---

[20] As described above, the *Sheffield* court stated that Sheffield had "commenced a hybrid action" on the ground that she sought plenary relief in her prior state court petition. 393 F. App'x at 813. This phrasing could be interpreted, incorrectly in our view, to suggest that because Sheffield sought relief unavailable in a hybrid proceeding, the state court judge was obligated to treat the proceeding as a hybrid one. We think the relevant question under the first prong of the inquiry is whether the petitioner sought relief that is not available under Article 78. The second prong asks whether the state court judge treated the case as a hybrid proceeding. This reading of *Sheffield* is consistent with the presumption against applying *res judicata*. If an Article 78 petitioner were deemed to have "commenced a hybrid action" simply by requesting damages that—in hindsight—cannot be characterized as incidental to the primary relief sought under

hybrid one. *Sheffield*, 393 F. App'x at 813. Stated differently, judgment in a prior Article 78 proceeding will preclude future damages claims only if the petitioner sought relief that could not be awarded in a pure Article 78 proceeding *and* the state court took affirmative action demonstrating that it adjudicated the proceeding as a hybrid one.

Both of these requirements must be satisfied to apply claim preclusion, because they serve different goals. The first recognizes that Article 78 affords state court petitioners an opportunity to obtain the "speedy correction of improper action by a body or officer." *Davidson*, 792 F.2d at 280 (internal quotation marks omitted). The decision whether to take advantage of Article 78's summary procedures (and to seek only relief that is available under Article 78) is committed, in the first instance, to the state court petitioner. The second requirement, which focuses on how the state court chose to adjudicate the proceeding, recognizes that a state court has several options when it is confronted with an Article 78 petition that poses questions or seeks relief outside the scope of Article 78. For example, the court can (1) sever the plenary claims so that they can be pursued in a separate action,[21] an approach that allows the court to

_____

CPLR 7806, a presumption would be created in favor of finding a hybrid action. This would amount to applying a presumption in favor of claim preclusion. In effect, it would require the state court judge to enter an order stating that a proceeding initiated under Article 78 was being handled exclusively under Article 78, lest the state court's disposition of the proceeding later be misunderstood to preclude the petitioner's plenary claims. As explained below, however, the presumption must run the other way. That is, the default rule must be that a petition filed under Article 78 commences a pure Article 78 proceeding, absent a clear indication to the contrary. When an Article 78 petition includes requests for plenary relief, the state court is *permitted* to adjudicate the proceeding as a hybrid one; but the state court is not required to do so, and claim preclusion should apply only if the state court left no doubt that it adjudicated the proceeding as a hybrid one.

[21] *See, e.g.*, *Parker*, 93 N.Y.2d at 347 (noting that, in an Article 78 proceeding, the trial court "severed and dismissed" the petitioner's section 1983 damages claims "without prejudice to . . . commencement of the appropriate plenary action" "because [those claims] were not incidental to the primary relief sought"); *Raykowski v. N.Y.C. Dep't of Transp.*, 687 N.Y.S.2d 68,

conduct a pure Article 78 proceeding, addressing only those claims for damages that are "incidental to the primary relief sought by the petitioner," CPLR 7806. Alternatively, the court can (2) enter an order under CPLR 103(c) converting the Article 78 proceeding to a plenary civil action.[22] Or, (3), the court can simply treat the proceeding as a hybrid proceeding (entering or not entering an order so announcing), and expressly address the petitioner's claims for Article 78 relief, as well as the claims for plenary relief, in one action on separate procedural tracks.[23]

Another option may be available for state courts faced with Article 78 petitions that seek relief outside of Article 78 limits: a court may elect to address only those claims that are properly brought in the Article 78 proceeding, without addressing those claims that are not properly presented. If, as in this case, the court acts on the expedited basis provided for under Article 78 and dismisses the proceeding, there may be no occasion or need for it to determine whether to address the plenary claims. We are aware of no provision of New York law requiring that a court assigned to manage an

---

68–69 (1st Dep't 1999) (concluding that the petitioner's Article 78 claims were time-barred, but modifying the order appealed from to allow the petitioner's section 1983 claim to proceed "in the form of a plenary action" because that claim was "not properly disposed of as an incident (*see*, CPLR 7806) of [the petitioner's] [A]rticle 78 claims"); *Chase Manhattan Bank v. N.Y. State Dep't of Env't Conservation*, 410 N.Y.S.2d 662, 663 (2d Dep't 1978) (severing from an Article 78 proceeding claims for a declaratory judgment and an unlawful taking).

[22] *See, e.g.*, *Dicker v. Glen Oaks Vill. Owners, Inc.*, 187 N.Y.S.3d 249, 251 (2d Dep't 2023); *Power v. Olympic Reg'l Dev. Auth.*, 150 N.Y.S.3d 340, 342 n.1 (3d Dep't 2021); *Rincon v. Annucci*, 130 N.Y.S.3d 567, 568 (3d Dep't 2020); *Williams v. Town of Carmel*, 106 N.Y.S.3d 333, 335 (2d Dep't 2019); *Goldman v. White Plains Ctr. for Nursing Care, LLC*, 801 N.Y.S.2d 508, 511–12 (Sup. Ct. 2005).

[23] *See, e.g.*, *Pilarz v. Helfer*, 50 N.Y.S.3d 680, 681 (4th Dep't 2017) ("We note at the outset that a CPLR article 78 proceeding is not the proper vehicle for that part of petitioner's challenge to the facial unconstitutionality of the [law at issue], and we thus convert the article 78 proceeding to a hybrid article 78 proceeding/declaratory judgment action (*see* CPLR 103 [c])." (internal citation omitted)); *see also Greenberg*, 996 N.Y.S.2d at 52.

Article 78 petition declare at the get-go whether it will adjudicate the petition as a pure Article 78 proceeding, treat it as a hybrid, or add to it a plenary track. Indeed, it strikes us that such a rule would undermine the summary nature and thus much of the utility of Article 78 proceedings. For example, determining whether an award of damages is "incidental" to the primary relief sought is a fact-specific inquiry that is not always amenable to decision at the outset of a proceeding. *See Gross*, 72 N.Y.2d at 236; *Pauk v. Bd. of Trs. of City Univ. of N.Y.*, 68 N.Y.2d 702, 705 (1986); *Metro. Taxicab Bd. of Trade v. N.Y. City Taxi & Limousine Comm'n*, 982 N.Y.S.2d 88, 90–92 (1st Dep't 2014). Instead, the state court is free to proceed directly to the merits and determine whether the petitioner is entitled to *any* relief. Thus, another option for Article 78 courts is to address the merits of the petitioner's challenge only insofar as it is properly brought under Article 78 in accordance with the summary procedures and deferential standard of review applicable in Article 78 proceedings. The court can thereby achieve the benefits of Article 78—in terms of simplicity and speed—without compromising the rights of either party to a full and fair hearing of plenary claims.

Only some of the management paths identified above afford the state court "the power to award the full measure of relief" available in a plenary action. *Davidson*, 792 F.2d at 278. The choice of which path to pursue is committed to the sound discretion of the state court. CPLR 103(c); *Davidson*, 792 F.2d at 281; *Jackson*, 53 N.Y.S.3d at 75. To determine the *res judicata* effect of a state court judgment that terminates a proceeding initiated under Article 78, a later court's task is to ascertain which type of proceeding the petitioner sought and which type the state court conducted.

In making those determinations, the default rule must be that a proceeding initiated by an Article 78 petition will be a pure Article 78 proceeding, absent clear indications otherwise. As explained above, it is the petitioner's choice whether to bring an Article 78 proceeding—with the attendant summary procedures, deferential review

of agency action, and limited menu of relief—or a plenary action. And it is the state judge's decision whether to address the case in the form in which it is brought—under Article 78—or instead to sacrifice speed and efficiency by converting it into either a hybrid proceeding or a plenary action. Because New York law calls for doubts to be resolved against imposing claim preclusion, *Buechel*, 97 N.Y.2d at 305, claim preclusion should apply only if it is clear that the state court treated the prior proceeding as one in which plenary relief was available.

To be sure, as discussed above, if the state court determines that an Article 78 petition includes requests for plenary relief—that is, if the proceeding was "not brought in the proper form"—the court may exercise its discretion to convert the proceeding into a hybrid proceeding. CPLR 103(c). But we will not presume that the state court has done so. *Davidson*, 792 F.2d at 281. The conversion requires a clear indication by the state court, through affirmative action or a statement, demonstrating that the court has exercised its discretion to entertain plenary claims. Only where the state court has taken such action can we conclude that the state court in fact conducted a proceeding in which it had "the power to award the full measure of relief" available in a plenary action, *Davidson*, 792 F.2d at 278.

In many cases, it will be easy to reach that conclusion: the court will explicitly identify the nature of the proceeding in a written order converting the proceeding;[24] will advise the parties orally; or will say so in its merits judgment or decision.[25] In other cases, including this one, reaching a conclusion will require a holistic analysis of the

---

[24] *See, e.g., Pilarz*, 50 N.Y.S.3d at 681; *Greenberg*, 996 N.Y.S.2d at 52.

[25] *See, e.g., 1640 State Route 104, LLC*, 172 N.Y.S.3d at 294; *Niebauer v. City of N.Y.*, 152 N.Y.S.3d 568, 568 (1st Dep't 2021); *Mulcahy*, 952 N.Y.S.2d at 165.

state court record.[26]  The touchstone of the claim preclusion inquiry remains whether the petitioner sought relief outside of Article 78 and if so, whether the prior proceeding was in fact adjudicated in a manner that allowed the court to award the full scope of plenary relief.

### D.    Applying this approach

Applying this approach to Whitfield's state court proceeding, we agree with the district court that the first prong is satisfied: that is, even though Whitfield styled his amended petition as a "VERIFIED PETITION" seeking relief under Article 78, in it he sought "compensatory damages for violating his rights not to be discriminated against, for violating his constitutional right to freedom of speech, for publishing false, defamatory and damaging statements, for emotional and psychological pain, suffering and distress, and for loss of all other benefits, advantages and rights." App'x at 29, 57. These sweeping claims and requests for damages cannot all fairly be characterized as "incidental" to the Article 78 relief Whitfield sought: namely, an order vacating ACS's decision not to hire him and directing ACS to hire him as a YDS. CPLR 7806; App'x at

---

[26] Relevant considerations may include: the procedural rules applied by the state court, *see Coma Realty Corp.*, 161 N.Y.S.3d at 128; the standard of review applied by the state court, *see Williams v. Cnty. of Onondaga*, 189 N.Y.S.3d 336, 338 (4th Dep't 2023); *Slesinger v. Dep't of Hous. Pres. & Dev. of City of N.Y.*, 834 N.Y.S.2d 107, 108 (1st Dep't 2007); whether the state court addressed the merits of any exclusively plenary claims, *see Corbett*, 816 F. App'x at 554; *Sheffield*, 393 F. App'x at 813; the statute of limitations applied by the state court, *see Cathie v. Greenstein*, 149 N.Y.S.3d 458, 460 (2d Dep't 2021) ("A proceeding pursuant to CPLR article 78 must be commenced within four months after the administrative determination sought to be reviewed becomes final and binding upon the petitioner." (citing CPLR 217(1)) (citation omitted)); whether the state court severed any plenary claims from the proceeding, treating the pure Article 78 proceeding separately, *see Parker*, 93 N.Y.2d at 347; and the language the state court uses when describing the nature and disposition of the proceeding.

35

57.[27] Thus, Whitfield's amended petition sought relief that is not available under Article 78.

We disagree with the district court, however, regarding whether the state court treated Whitfield's proceeding as a hybrid one. On our reading, the record holds two primary indications that the state court treated Whitfield's proceeding as a pure Article 78 proceeding.

*First*, in its August 2020 decision, the state court consistently used the language of a pure Article 78 proceeding; it never used the term "hybrid" or mentioned a "conversion." For example, in the opening sentence, the court described Whitfield's proceeding simply as a "CPLR article 78 proceeding." *See Whitfield* (Sup. Ct.), 2020 WL 5040369, at *1 ("In this CPLR article 78 proceeding, the petitioner seeks judicial review of a[n] [ACS] determination declining to hire him for the position of [YDS]."). Further, the state court repeatedly referred to Whitfield as the "petitioner"—never the "petitioner/plaintiff" or "plaintiff."[28] Finally, it appears from the decretal language, where the court denied the "petition" and dismissed "the proceeding," not the "hybrid proceeding" or "action," *id.* at *5; *see also id.* at *1 ("The petition now is denied on the

---

[27] *See also Antonsen v. Ward*, 943 F.2d 198, 204 (2d Cir. 1991) (compensatory damages for "emotional pain and suffering" not incidental "to the main relief [the petitioner] sought in state court: a declaration that the department's actions were arbitrary and capricious and reinstatement to his former position"); *Parker*, 93 N.Y.2d at 348 (damages sought by the plaintiff were not incidental under CPLR 7806 because they went beyond "the restoration of any economic benefits derivable from [the plaintiff's] status as a [government employee]").

[28] *Compare, e.g.*, *1640 State Route 104, LLC*, 172 N.Y.S.3d at 294 (using the term "petitioner-plaintiff" in a hybrid Article 78 proceeding); *Greenberg*, 996 N.Y.S.2d at 49 ("plaintiff/petitioner"); *Shinnecock Neighbors v. Town of Southampton*, 37 N.Y.S.3d 679, 681 (Sup. Ct. 2016) ("petitioners/plaintiffs"); *Sch. Transparency Org. for Parents v. Harpursville Cent. Sch. Dist.*, 17 N.Y.S.3d 836, 837–38 & n.1 (Sup. Ct. 2015) (same).

merits, and the proceeding is dismissed."),[29] that the court itself understood that it was only addressing the Article 78 claims.

Judging from the language of its opinion, the Appellate Division seems also to have understood the Supreme Court to have conducted a pure Article 78 proceeding. It opened by calling the case a "proceeding brought pursuant to CPLR article 78." *Whitfield* (App. Div.), 158 N.Y.S.3d at 64.[30] It referred to the Supreme Court as "[t]he article 78 court." *Id.* This language stands in contrast to the language used in Appellate Division decisions involving hybrid proceedings. *See, e.g.*, *1640 State Route 104, LLC v. Town of Ontario Planning Bd.*, 172 N.Y.S.3d 292, 294 (4th Dep't 2022) (reviewing a "hybrid CPLR article 78 proceeding and action under, inter alia, 42 USC § 1983"); *Greenberg v. Assessor of Town of Scarsdale*, 996 N.Y.S.2d 48, 49 (2d Dep't 2014) (reviewing a "hybrid action"); *Mulcahy v. N.Y.C. Dep't of Educ.*, 952 N.Y.S.2d 164, 165 (1st Dep't 2012) (reviewing a "hybrid article 78 proceeding/ 42 USC § 1983 action").

---

[29] *Compare, e.g.*, *Generoso v. Adams*, 164 N.Y.S.3d 383, 386, 397 (Sup. Ct. 2022) (describing the proceeding as a "hybrid Article 78 proceeding" and dismissing with prejudice "[a]ll of Petitioners' claims as set forth in its Order to Show Cause, Article 78 Petition and Complaint and Amended Article 78 Petition and Complaint"); *Shinnecock Neighbors*, 37 N.Y.S.3d at 681 (describing the proceeding as a "hybrid proceeding and action" and denying motion to "dismiss[] the combined petition and complaint"); *School Transparency Org. for Parents*, 17 N.Y.S.3d at 837, 844 (in a "hybrid Article 78 proceeding/action seeking declaratory and injunctive relief," ordering that "the petition/complaint is denied and dismissed in its entirety").

[30] The first sentence of the Appellate Division's opinion reads in full:

> Judgment, Supreme Court, New York County (John J. Kelley, J.) entered August 27, 2020, denying the petition, inter alia, to annul the determination of respondent, made on or about January 30, 2019, which declined to hire petitioner as a youth development specialist, and dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.

*Whitfield* (App. Div.), 158 N.Y.S.3d at 64.

*Second*, the State Supreme Court took pains to clarify that its analysis of Whitfield's claims was "constrained" by the standard of review and summary procedures applicable in Article 78 proceedings. *See Whitfield* (Sup. Ct.), 2020 WL 5040369, at *5 ("[The court] is constrained to determine only whether ACS's [hiring] determination . . . was completely irrational."); *id.* ("Inasmuch as the petitioner elected to challenge ACS's hiring decision via this CPLR article 78 proceeding, the court is constrained to apply the 'arbitrary and capricious' standard of judicial review (see CPLR 7803[3]). . . ."). Critically, the court stressed that, had Whitfield pursued his claims in a plenary action instead of in an Article 78 proceeding, his claims would have been decided under the preponderance of the evidence standard, which is less deferential to the agency than the arbitrary and capricious standard of CPLR 7803(3). *Id.* The court also stated that its review was "limited to the record made before the agency," and (again citing CPLR 7803(3)), explained its task as follows: "Where, as here, an administrative determination is made, and there is no statutory requirement of a trial-type hearing, that determination must be confirmed unless it is arbitrary and capricious, affected by an error of law, or made in violation of lawful procedure." *Id.* at *2.[31]

The state court's repeated invocation of the Article 78 standard of review and summary procedure hardly seems consistent with the view that it conducted a hybrid proceeding. In fact, we find almost nothing in the record to suggest that the state court thought it was treating Whitfield's proceeding as a hybrid. Indeed, Whitfield explicitly requested that the state court convert his First Amendment and defamation claims into

---

[31] The Appellate Division likewise cited CPLR 7803(3) and invoked the Article 78 standard of review, concluding that ACS's hiring decision "was not arbitrary and capricious or affected by an error of law," and that ACS's proffered reasons for not hiring Whitfield were "rationally based in the record." *Whitfield* (App. Div.), 158 N.Y.S.3d at 64.

"an action in law pursuant to CPLR § 103(c)," but (so far as the record before us reveals) the state court did not address this request. *See* Dist. Ct. Dkt. 38-5, at 51 (memorandum of law in support of petitioner's reply to respondent's verified answer).

The district court identified several reasons why, in its view, the state court treated Whitfield's proceeding as a hybrid one. Most importantly, the district court concluded that the state court had "addressed at least some of Whitfield's non-Article 78 claims on the merits." Reconsideration Decision, 2022 WL 563548, at *2. Its conclusion rested primarily on the state court's application of the *Pickering* balancing test and on the state court's "reject[ion] [of] the petitioner's contention that [ACS] violated his First Amendment rights when it considered his published writing as a negative factor in evaluating his employment application," *id.* (quoting *Whitfield* (Sup. Ct.), 2020 WL 5040369, at *4).

On our read, however, the state court's First Amendment discussion was not an analysis of any standalone constitutional claim; rather, it is best understood as part of the state court's broader Article 78 analysis of whether ACS's decision not to hire Whitfield was "affected by an error of law or was arbitrary and capricious or an abuse of discretion" under CPLR 7803(3).

New York courts have explained that an agency's decision is "affected by an error of law" if the decision is "contrary to Constitution or statute." *See Meisner v. Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs.*, 108 N.Y.S.3d 206, 209–10 (3d Dep't 2019) (quoting *Susan M. v. N.Y. Law Sch.*, 76 N.Y.2d 241, 246 (1990)). Here, in framing its First Amendment analysis, the state court repeatedly cited the standard of review set out in CPLR 7803(3). As described above, after articulating the *Pickering* balancing test, the court stated:

> Although the court might not have accorded the petitioner's writings the same level of significance as the ACS accorded them, the court may not

substitute its judgment for that of ACS as it relates to its hiring decisions, and is constrained to determine only whether ACS's determination in this regard was completely irrational (*see Matter of Weiss v County of Nassau*, [112 N.Y.S.3d 746, 746 (2d Dep't 2019)]).

*Whitfield* (Sup. Ct.), 2020 WL 5040369, at *5.[32] "Given this limitation," the court wrote, "it was not *irrational* for ACS to consider the petitioner's published writings" in making its hiring decision. *Id.* (emphasis added). The court concluded this analysis by stating: "Hence, consideration of the petitioner's prior writings, and the level of importance attached to those writings by ACS, did not render ACS's determination *arbitrary and capricious or affected by an error of law*." *Id.* (emphasis added). And in the next sentence, the court emphasized that, "had the petitioner commenced a direct action against ACS . . . rather than seeking judicial review pursuant to CPLR article 78, he would have had the opportunity to establish his claims only by the preponderance of the evidence." *Id.*

Thus, we do not understand the state court's First Amendment discussion to reflect a substantive adjudication of any freestanding constitutional claim. Rather, the court's repeated references to the Article 78 standard of review demonstrate that it invoked First Amendment principles in order to analyze whether ACS's decision was arbitrary and capricious or "affected by an error of law" under CPLR 7803(3).[33] We

---

[32] Tellingly here, *Matter of Weiss*, relied upon by the state court to frame its First Amendment analysis, does not address the First Amendment; rather, it addresses the standard of review applicable in Article 78 proceedings. *See* 112 N.Y.S.3d at 746.

[33] As indicated above, we do not address whether the state court's First Amendment discussion has any *issue*-preclusive effect in this action.

therefore disagree with the district court that the state court adjudicated at least some of Whitfield's non-Article 78 claims on the merits.[34]

The standard of review applied by the state court tends to corroborate our conclusion that the state court did not treat the Article 78 proceeding as a hybrid one, but the standard of review alone is not sufficient to determine whether the proceeding was adjudicated as a hybrid. In a hypothetical case, where it is clear that a prior proceeding was adjudicated as a hybrid or plenary action, *res judicata* will bar future damages claims arising from the same events (assuming the party to be bound had a full and fair opportunity to litigate). This is so even if it appears that the state court applied an incorrect standard of review to the plenary claims that were raised. In that instance, principles of comity dictate that the proper recourse for the aggrieved state court petitioner is to the state appellate courts. *See Sheffield*, 393 F. App'x at 813 n.3. The answer would not be to relieve the state court petitioner of the claim preclusive effect of a proceeding that the state court judge intended to have claim preclusive effect. Nor would application of a standard of review different from that governing a subsequent

---

[34] Because the state court here did not explicitly address any of Whitfield's plenary claims on the merits, this case is distinguishable from *Sheffield* and *Corbett*. In *Sheffield*, as discussed above, although the state court did not explicitly address *all* of Sheffield's plenary claims, we found that the state court had explicitly addressed some of them: specifically, the state court "dismissed Sheffield's claim for damages for defamation and racial discrimination." 393 F. App'x at 813. That the state court explicitly addressed some of Sheffield's plenary claims supported our conclusion that the state court "treated" Sheffield's proceeding as a hybrid one. *Id.* Similarly, in *Corbett*, the state court explicitly addressed the plaintiff's non-Article 78 claims: a facial constitutional challenge and a claim under the Freedom of Information Law. 816 F. App'x at 554; *see Corbett v. City of N.Y.*, 73 N.Y.S.3d 568, 569–70 (1st Dep't 2018).

action, by itself, establish that the first court lacked "the power to award the full measure of relief sought in the later litigation." *Davidson*, 792 F.2d at 278.[35]

The district court cited two additional reasons why, in its view, Whitfield's state court proceeding was a hybrid proceeding. First, the district court emphasized, the state court wrote that it dismissed Whitfield's petition "on the merits." *Whitfield* (S.D.N.Y.), 2021 WL 1700592, at *2; Reconsideration Decision, 2022 WL 563548, at *2 (same). We do not think this language establishes that the state court conducted a hybrid proceeding. CPLR 7806, as discussed above, sets out the scope of judgments that may be entered in Article 78 proceedings. That section provides in part: "The judgment may grant the petitioner the relief to which he is entitled, or may dismiss the proceeding either *on the merits* or with leave to renew." CPLR 7806 (emphasis added). Because the CPLR explicitly uses the phrase "on the merits" to describe a type of dismissal in a pure Article 78 proceeding (as opposed to a dismissal "with leave to renew"), the state court's recitation of this phrase was consistent with the court's exercise of its prerogative to dismiss the Article 78 proceeding without addressing any claims not properly brought under Article 78. The state court's use of this *pro forma* language therefore does not establish that it adjudicated Whitfield's proceeding as a hybrid.

Second, the district court relied on the fact that the state court did not expressly sever Whitfield's plenary damages claims from his Article 78 claims. *See* Reconsideration Decision, 2022 WL 563548, at *2. In the district court's view, this

---

[35] It is settled that *res judicata* may apply even where the first court applied a standard of review less plaintiff-friendly than would apply in a subsequent litigation. *See, e.g., Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 469, 485 (1982); *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 267–68 (2d Cir. 1977). *But see id.* at 278–79 (Feinberg, J., dissenting) (arguing that *res judicata* should not apply because the applicable standard of review prevented the state court from "conduct[ing] a de novo inquiry into the merits of plaintiff's claim"). We hold today only that the standard of review applied in the initial proceeding is one factor of many that a second court may consider in determining what type of proceeding the first court conducted.

indicated that the state court intended to rule on Whitfield's claims for plenary relief as well as his Article 78 claims. *Id.* For the reasons set forth above, however, we think this approach reflects an incorrect presumption. Whitfield styled his petition as an Article 78 petition, and the state court judge characterized the ensuing proceeding as a "CPLR article 78 proceeding," *Whitfield* (Sup. Ct.), 2020 WL 5040369, at *1, *5. Absent clear indication that the state court intended to treat it as a hybrid proceeding, we should therefore presume that the proceeding was a pure Article 78 proceeding and that future damages claims are not barred by *res judicata*. *Cf. Buechel*, 97 N.Y.2d at 305. As discussed, the state court had the *authority* to sever Whitfield's plenary claims from the Article 78 claims, or to convert the proceeding into a plenary proceeding, or to treat it as a hybrid. But the state court was not required to commit at the outset to a management technique for the litigation. Its decision to dismiss the proceeding without expressly addressing Whitfield's plenary claims should not be deemed an order converting Whitfield's petition. Although all now agree that Whitfield's petition includes claims for plenary relief because he sought damages that were likely not "incidental to the primary relief sought," CPLR 7806, determining what relief is "incidental" will not always be a simple task, *see Gross*, 72 N.Y.2d at 236. The task may be especially difficult in the case of a *pro se* petitioner not familiar with the limitations of Article 78.

The state court was entitled to address Whitfield's petition in the capacity under which the court's jurisdiction was invoked—Article 78—and to proceed directly to the merits before determining how best to treat claims for relief that may have been outside the bounds of Article 78. That is the route the state court chose here. That it did not formally sever Whitfield's plenary claims at the Article 78 merits discussion stage is insufficient to demonstrate that it treated the proceeding as a hybrid.

In sum, we conclude that the state court adjudicated Whitfield's proceeding as a pure Article 78 proceeding. It described the proceeding as an Article 78 proceeding, and

it repeatedly emphasized that it was "constrained" to consider Whitfield's claims under the summary procedures and deferential standard of review applicable in Article 78 proceedings. *Whitfield* (Sup. Ct.), 2020 WL 5040369, at *5. It never described the proceeding as a hybrid proceeding. It denied the "petition" and dismissed "the proceeding"—all language suited to Article 78. It never entered an order converting the proceeding. And it did not explicitly address any of Whitfield's plenary damages claims. Accordingly, Whitfield's state court proceeding is properly characterized as a pure Article 78 proceeding. The state court therefore lacked "the power to award the full measure of relief" Whitfield seeks in this litigation, *Davidson*, 792 F.2d at 278, and the district court erred by dismissing Whitfield's amended complaint on *res judicata* grounds.

## II.     Other Matters

Whitfield raises two additional arguments on appeal. Neither has merit.

*First*, Whitfield argues that the district court abused its discretion when it denied Whitfield's motion for sanctions against defense counsel,[36] urging, in essence, that Defendants' arguments regarding the application of *res judicata* to this case were so manifestly incorrect as to be frivolous and sanctionable under Federal Rule of Civil Procedure 11. As the above discussion should demonstrate, we disagree. Although we ultimately are persuaded that Whitfield's claims are not barred by *res judicata*, the issue was hardly free from doubt, as illustrated by the district court's opinions. Defendants'

---

[36] Defendants submit that we should not reach this issue because Whitfield's notice of appeal references only the district court's decision dismissing the amended complaint, and not the district court's subsequent reconsideration decision, which denied Whitfield's sanctions motion. Because we construe *pro se* notices of appeal liberally and affirm the denial in any event, we reject Defendants' effort to limit the scope of the appeal. *Cf. Collymore v. Krystal Myers, RN*, 74 F.4th 22, 26–27 (2d Cir. 2023); *Elliott v. City of Hartford*, 823 F.3d 170, 172 (2d Cir. 2016).

arguments in support of dismissal were not frivolous. Accordingly, the district court properly denied Whitfield's motion for sanctions.

*Second*, Whitfield urges us to remand this case to a different district judge, asserting that the district judge was not impartial. We emphatically reject Whitfield's argument and deny his request. Nothing in the record provides the slightest basis for taking the rare step of reassignment. *Cf. Vincent v. Comm'r of Social Sec.*, 651 F.3d 299, 308 (2d Cir. 2011).

## CONCLUSION

For the reasons explained above, we vacate the district court's dismissal of Whitfield's amended complaint on *res judicata* grounds and remand for further proceedings. In addition, we affirm the district court's denial of Whitfield's sanctions motion and deny his reassignment request. On remand, Defendants may be permitted to move to dismiss again based on the alternative grounds first raised in their December 2020 motion and as yet not addressed by either the district court or this Court.

**VACATED in part, AFFIRMED in part, and REMANDED.**

RICHARD J. SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

I have no qualms with the majority's fine articulation of the law we must apply with respect to *res judicata* in this case. I write separately only to address what is, in my view, the majority's misapplication of law to facts. To my mind, the district court properly held that *res judicata* barred Whitfield from bringing his section 1983 and New York common-law claims in federal court because the state court adjudicated a hybrid proceeding by addressing both his Article 78 and First Amendment claims. I therefore respectfully dissent from Part I of the majority opinion.

For starters, the majority and I agree on a number of basic legal propositions. First, we agree that a decision rendered in a "pure" Article 78 proceeding in state court has no preclusive effect on a subsequent section 1983 action in federal court because the state court lacked authority to adjudicate non-Article 78 claims brought by the petitioner. *See Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004). Second, we both take the view that *res judicata* applies when a state-court judge explicitly converts an Article 78 proceeding into a "hybrid" Article 78/plenary proceeding, since the petitioner, in those instances, is entitled to receive "the full measure of relief sought in the later litigation." *Davidson v.*

*Capuano*, 792 F.2d 275, 278 (2d Cir. 1986). Finally, the majority and I agree that a district court should treat a state-court proceeding initiated under Article 78 as a hybrid action that is entitled to *res judicata* effect only if (1) the petitioner commenced a hybrid action by pleading claims or relief not available in an Article 78 proceeding and (2) the state court adjudicated the proceeding as a hybrid action. *See Corbett v. City of New York*, 816 F. App'x 551, 554 (2d Cir. 2020); *Sheffield v. Sheriff of Rockland Cty. Sheriff Dep't*, 393 F. App'x 808, 813 (2d Cir. 2010).

The majority and I disagree only as to how these legal principles map onto the facts at hand. Like the majority, I would hold that, for purposes of prong one, Whitfield commenced his action as a hybrid proceeding because he asked for damages that were not "incidental to the primary relief sought." N.Y. C.P.L.R. § 7806; *see also Corbett*, 816 F. App'x at 554 (explaining that plaintiff's state-court action was brought as a "hybrid proceeding" entitled to claim-preclusive effect because he had sought "both Article 78 relief" *and* "additional forms of relief [not] available in an Article 78 proceeding"); *Sheffield*, 393 F. App'x at 813 (holding that proceeding was a hybrid action in part because plaintiff "clearly presented" claims that were "inappropriate for Article . . . 78 review"). In no uncertain terms, Whitfield's petition alleged violations of the First and Fourteenth Amendments of

2

the United States Constitution and article 1 sections 8 and 9 of the New York Constitution, and sought "compensatory and special" damages for "emotional pain, suffering[,] and injuries." App'x at 49–51. By asserting this plenary claim and seeking compensatory damages in his petition, Whitfield sought relief outside the scope of Article 78 remedies and thereby commenced a hybrid action. *See Davidson*, 792 F.2d at 278–79 (noting that "substantial New York authority does indicate that damages for civil[-]rights violations are not included in th[e] category" of "damages . . . properly characterized as incidental to the primary relief sought") (collecting cases).

It is at prong two of the *res judicata* analysis that the majority and I part ways. From my review of the record, it seems clear that the state court did in fact adjudicate a proceeding that was hybrid in nature by addressing Whitfield's First Amendment free-speech claims on the merits. To be sure, I agree with the majority's holding that – where a state court never formally converts an action into a hybrid action – the claim-preclusive effect of a state court's denial of an Article 78 petition hinges on whether there is clear evidence that the state court adjudicated the proceeding as a hybrid one. I likewise have no difficulty with the multifactor test the majority establishes to determine whether a state court adjudicated a

hybrid proceeding. In my view, these rules comport well with the approach we have followed in our prior precedents. *See, e.g.*, *Sheffield*, 393 F. App'x at 812 (explaining that the court's *res judicata* analysis turned on the fact that it was "evident" from "the manner in which the state court had adjudicated" the prior action that the "state court [had] adjudicated it" as a hybrid action).

But I cannot agree with the majority's conclusion that "the state court [did not] treat[] Whitfield's proceeding as a hybrid one." Maj. Op. at 36. To begin, the New York Supreme Court "reject[ed]" Whitfield's "contention that [the New York City Administration for Children's Services (the "ACS")] violated his First Amendment rights when it considered his published writings as a negative factor in evaluating his employment application." App'x at 66. Further, it undertook a detailed analysis of federal caselaw relevant to Whitfield's First Amendment claim by surveying decisions by the United States Supreme Court and our sister circuits. *See id.* at 66–67. Finally, the state court expressly stated that its rejection of the claims in Whitfield's Article 78 petition was "on the merits." *Id.* at 61. To my mind, this means that the third factor from the majority's multifactor test – namely, "whether the state court disposed of an exclusively plenary claim on the merits,"

4

Maj. Op. at 35 n.26 – strongly urges us to treat Whitfield's state-court proceeding as a hybrid proceeding.

Along similar lines, the First Department addressed and found no merit in Whitfield's "argument that . . . [ACS] violated his free[-]speech rights under the First Amendment." *Whitfield v. N.Y. Admin. for Child.'s Servs.*, 158 N.Y.S.3d 63, 64–65 (1st Dep't 2021), *leave to appeal denied*, 38 N.Y.3d 911 (2022). As an issue separate from whether it was "arbitrary or capricious" for ACS to conclude that Whitfield's "opinions" from his "essay published in 2003" "might demonstrate a cynicism that would impede his ability to counsel at-risk youth," that court expressly considered Whitfield's "argument that, to the extent [ACS] declined to hire him on account of the views he expressed in the 2003 essay, it violated his free[-]speech rights under the First Amendment." *Id.* In rejecting this contention, the First Department cited precedent from this Court and the New York Court of Appeals applying the First Amendment balancing test introduced by the Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563 (1968). *See id.* at 65. Based on my read of these decisions, I find no reason to doubt that "the [state] Supreme Court and First Department addressed [Whitfield's] non-Article 78 claims on the merits, rendering the state proceeding a hybrid proceeding." *Corbett*, 816 F. App'x at 554. That alone is

5

enough to "preclude relitigation of a civil[-]rights claim in a federal court [because] the state proceeding reached the federal constitutional issues involved." *Powell v. Ward*, 643 F.2d 924, 934 (2d Cir. 1981).

Indeed, I struggle to see much daylight between this case and *Sheffield*, in which we applied nearly identical reasoning and concluded that a hybrid proceeding precluded a later federal action. *See* 393 F. App'x at 812–13. In that case, the plaintiff initially filed an Article 78 petition in which she "sought [multiple] forms of relief," including "full reinstatement of employment and back pay with interest" *and* "compensatory and punitive damages . . . . in connection with [her civil-rights] claims" – the latter of which would be "inappropriate for [pure] Article . . . 78 review." *Id.* (alterations and internal quotation marks omitted). We observed that the state court had "adjudicated" and "dismissed [her] claim for damages for . . . discrimination [and other alleged civil-rights violations]," and "had the authority to award the [compensatory-damages] relief [the Article 78 petitioner] sought" in "connection with [her civil-rights] claims." *Id.* It was therefore "clear to us" that "the state court [had] treated the case as a hybrid . . . Article 78/plenary action," and "we [had to] view it as such for preclusion purposes." *Id.*

6

The majority declines to credit "the state court's First Amendment discussion" for *res judicata* purposes because, according to the majority, the state court's sole reason for addressing the merits of Whitfield's alleged federal constitutional violation was to determine "whether ACS's decision" should be overturned because it was 'affected by an error of law or was arbitrary and capricious or an abuse of discretion.'"[1] Maj. Op. at 39–41 (quoting N.Y. C.P.L.R. § 7803(3)). But even if the state court understood itself to be reviewing Whitfield's constitutional claim for the limited purpose of determining whether the agency "determination . . . was affected by an error of law," N.Y. C.P.L.R. § 7803(3), and even if the state court applied a "far more deferential" standard of review than "the preponderance of the evidence standard" that would have applied "had [Whitfield] commenced a direct action against ACS," App'x at 68 (internal quotation marks omitted), I don't see why that should matter for purposes of our *res judicata* analysis. Neither the majority opinion nor Whitfield's briefs identifies any Second Circuit or New York authority suggesting that the *res judicata* effect of

---

[1] Section 7803 of the New York Civil Practice Law and Rules provides that a petitioner may bring an Article 78 proceeding to challenge, among other things, an agency decision that "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." N.Y. C.P.L.R. § 7803(3).

7

a state court's decision turns on the standard of review being the same in both the state and federal actions.

To the contrary, New York preclusion law holds simply that "a final judgment on the merits of an action precludes the parties or their privies from relitigating," *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008) (internal quotation marks omitted), any "later claim arising out of the same factual grouping as [the] earlier[-]litigated claim[,] even if the later claim is based on different legal theories or seeks dissimilar or additional relief," *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019) (internal quotation marks omitted). Notably, the New York Court of Appeals has made clear that "[w]hen alternative theories are available to recover what is essentially the same relief for harm arising out of the same or related facts such as would constitute a single factual grouping," even "the circumstance that the theories involve materially different elements of proof will not justify presenting the claim by two different actions." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357–58 (1981) (internal quotation marks omitted). If "differen[ces]" in "legal theories" cannot, under New York law, undermine the *res judicata* effect of the state court's ruling, I'm not sure why any distinctions between standards of review should matter for claim-

8

preclusion purposes either. *Id*.

Indeed, we ourselves have tacitly rejected the argument that an Article 78 court's application of a more deferential standard of review should defeat the *res judicata* effect of its decision in a subsequent federal civil-rights action. In *Mitchell v. National Broadcasting Co.*, we held that an Article 78 proceeding precluded a section 1981 civil-rights action. *See* 553 F.2d 265, 266, 276–77 (2d Cir. 1977). We did so over a dissent from Judge Feinberg, who argued that "the state judgment" should not be afforded "*res judicata* effect" because the court's "scope of review was governed by Article 78," which "contemplate[s] quite limited review based on the sufficiency of the evidence compiled in the administrative proceeding" and prevented the state court from "conduct[ing] a *de novo* inquiry into the merits of plaintiff's claim." *Id.* at 278–79. According to Judge Feinberg, this meant that "the state procedures in th[at] case clearly did not provide the plaintiff with the same protections that would [have] be[en] available in the federal court." *Id.* The majority disagreed and precluded the federal action even though the state court applied a different standard of review than the one that would have applied in the federal case. *Id.* at 276–77.

Against this legal backdrop, I am persuaded that the state court's review of Whitfield's free-speech claims – while conducted under the rubric of N.Y. C.P.L.R. § 7803(3) – constituted "a final judgment on the merits of" the claim he now seeks to "relitigat[e]" in this section 1983 action. *Giannone*, 548 F.3d at 193 (internal quotation marks omitted). It bears noting that the New York Supreme Court devoted almost half of its ten-page decision to addressing Whitfield's First Amendment claim for compensatory damages by examining caselaw from the United States Supreme Court as well as several of our sister circuits. *See* App'x at 63–69. It is difficult to imagine that the state court would have gone to such lengths, and cited such authorities, if it had been laboring under the impression that it was adjudicating "a pure Article 78 proceeding" rather than "a hybrid action." *Sheffield*, 393 F. App'x at 812–13.

For all these reasons, I would hold that, under the New York Court of Appeals's precedents and our own, the district court properly concluded that (1) Whitfield's prior Article 78 petition commenced a hybrid proceeding, (2) the New York Supreme Court and First Department adjudicated it as such, and (3) Whitfield's subsequent section 1983 action should thus be precluded under the doctrine of *res judicata*. I therefore respectfully dissent.

10